UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LANDMARK AMERICAN INSURANCE )
COMPANY, )
)
    Plaintiff, )
)
v. ) Civil Action No. 00-JEO-3440-S
)
KEARNEY MACHINERY & SUPPLY, )
INC., *et al.*, )
)
    Defendants. )

FILED
03 APR -2 PM 2:33
U.S. [illegible]
[illegible] ALABAMA

ENTERED
APR 0 2 2003

## MEMORANDUM OPINION

This action is before the court on plaintiff's objections to the report and recommendation of United States Magistrate Judge John E. Ott regarding plaintiff's motion for summary judgment and the motion for leave to amend filed by defendant Kearney Machinery & Supply, Inc. ("Kearney"). (Doc. 27.[1]) Upon consideration of the record, the submission of plaintiff and the relevant law, the court finds that plaintiff's objections are due to be overruled.

### I. DISCUSSION

Plaintiff Landmark American Insurance Company ("Landmark" or "plaintiff") filed this action on November 30, 2000, asking for a declaration of the parties' rights and obligations under certain insurance policies (the "policies")[2] with respect to claims arising out of an underlying case filed against Kearney by defendant Precision Designs, Inc. ("Precision"). On October 4, 2001, it filed a motion for summary judgment (doc. 14) that was, along with Kearney's motion for leave to amend the pleadings (doc. 23), the subject of a magistrate judge's report and recommendation entered August 14, 2002. (Doc. 26.) The report and recommendation advised that the motion for summary judgment should be granted in part and denied in part, and that the motion for leave to amend should be granted. Landmark asserts a number of specific objections to the report and recommendation.

---

[1] All references to a "Doc. #" refer to the numbers assigned to pleadings stamped by the Clerk as "filed."

[2] These policies are attached as exhibits A, B and C to doc. 15.

A.     **Objection as to Burden of Proof**

Landmark first complains that the report and recommendation incorrectly put the burden of proof on the insurer. Landmark argues that, under Alabama law, which the parties agree applies to this case, the burden should be on the insured to show that a claim falls within the definition of coverage. Thus, it argues, Kearney has the burden of proving that "the relevant acts or events alleged in the underlying complaint and amendments fell within the definition of coverage under the Landmark policies." (Doc. 27 at ¶ 2.) Landmark further argues that Kearney did not meet this burden in opposing the motion for summary judgment, and that Landmark is thus due to be granted summary judgment in its favor.

In this context, however, it is Landmark, as the summary judgment movant, who bears the burden "to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). How this burden should be met depends upon whether the movant has the burden of proof at trial, as another judge in this District recently explained:

> The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick [v. City of Atlanta]*, 2 F.3d [1112,] 1115-17 [(11th Cir. 1993)] (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.
>
> If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.
>
> The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require

> evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

*Stedman v. Bizmart, Inc.*, 219 F. Supp. 2d 1212, 1214-15 (N.D. Ala. 2002).

Landmark argues, in essence, that it does not have the burden at trial of showing that "the relevant acts or events alleged in the underlying complaint and amendments fell within the definition of coverage under the Landmark policies." (Doc. 27 at ¶ 2.) With respect to the determination of whether an insurer owes to its insured a duty to defend or indemnify, Alabama courts have stated as follows:

> It is well settled "that [an] insurer's duty to defend is more extensive than its duty to [indemnify]." *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985) (citations omitted). Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. *Id.* at 1168. If the allegations of the injured party's complaint show an accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977) (citing *Goldberg v. Lumber Mut. Cas. Ins. Co.*, 297 N.Y. 148, 77 N.E. 2d 131 (1948)). However, "[t]his Court ... has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured." *Ladner*, 347 So. 2d at 103. In *Pacific Indemnity Co. v. Run- A-Ford Co.*, 276 Ala. 311, 161 So. 2d 789 (1964), this Court explained:
>
>> "We are of opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence...."
>
> 276 Ala. at 318, 161 So. 2d at 795; *see Ladner*, 347 So. 2d at 103 (quoting this language). "[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So. 2d 661, 668 (Ala. 1995) (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164 (Ala. 1985)) (other citations omitted). When a

3

> complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy. *Blackburn*, 667 So. 2d at 670 (citing *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 574 (Ala. 1988)).

*Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001).

It appears that the state-law analysis of whether an insurer has a duty to defend or indemnify is not strictly subject to a burden-shifting analysis, but essentially is a neutral evaluation by the court of the complaint and surrounding facts. In this case, the summary judgment burden-shifting scheme must be superimposed on this neutral evaluation. Landmark seems to complain that any burden was placed upon it at all. The principles set forth above make it clear that it had the burden to go forward. The burden placed upon Landmark in the report and recommendation does not appear to be improper or inconsistent with the principles set forth above. This first objection must therefore be overruled.

**B.    Objection as to Conclusion Regarding Policy Language**

Next, Landmark argues that the report and recommendation contains the erroneous conclusion that "policy language, even where free from ambiguity, should be 'construed liberally in favor of the insured and strictly against the insurer.'" (Doc. 27 at ¶ 3, quoting doc. 26 at 7, n.3.) Kearney did not argue that the policy language was ambiguous, Landmark asserts, and the magistrate judge did not hold that it was ambiguous. (*Id.* at ¶ 3.) Therefore, Landmark argues, the policies should be enforced as written, in which case it is due summary judgment, as the acts alleged in the complaint are not covered "occurrences." (*Id.*)

The passage Landmark challenges is merely a statement of established Alabama law that is cited in footnote three of the report and recommendation. It states as follows:

> Alabama law regarding the interpretation of insurance contracts requires that they be "construed 'liberally in favor of the insured and strictly against the insurer,'" and that "exclusions from coverage contained in insurance policies are to be interpreted narrowly in order to provide for maximum coverage. *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379 (Ala. 1996)." *United Services Auto. Ass'n v. Vogel*, 733 So. 2d 401, 403 (Ala. Civ. App. 1998).

(Doc. 26 at 7, n.3).

4

The opinion of *Vogel* court, cited in the report and recommendation, states more fully as follows:

> Under Alabama law, insurance contracts are to be construed "liberally in favor of the insured and strictly against the insurer," and exclusions from coverage contained in insurance policies are to be interpreted narrowly in order to provide for maximum coverage. *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379 (Ala. 1996). The policy underlying this rule was stated by our supreme court:
>
> "An insurance policy is written by the insurance company. Most insureds depend upon the company to provide the coverage they seek. When doubt exists whether coverage is provided, the language used by the insurer must be construed for the benefit of the insured. *Aetna Casualty & Surety Co. v. Chapman*, 240 Ala. 599, 200 So. 425 (1941). Likewise, where ambiguity exists in the language of an exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording."
>
> *Guaranty Nat'l Ins. Co. v. Marshall County Bd. of Educ.*, 540 So. 2d 745, 748 (Ala.1989) (emphasis added).
>
> "Where there is any doubt or confusion as to the meaning of a term in an insurance policy, the general rule of contracts applies to the policy, so that the contract is interpreted against the party which drafted the contract. *Home Indemnity Co. v. Employers Nat'l Ins. Corp.*, 564 So. 2d 945 (Ala.1990). Any language of an insurance contract that is susceptible to more than one interpretation must be construed in favor of coverage for the insured. *St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hospital*, 584 So. 2d 1316, 1322 (Ala. 1991) (citing *National Union Fire Ins. Co. v. Leeds*, 530 So. 2d 205, 207 (Ala. 1988))."
>
> *Boone v. Safeway Insurance Co. of Alabama*, 690 So. 2d 404, 406 (Ala. Civ. App. 1997).

*Vogel*, 733 So. 2d at 403-404.

Landmark complains that, before setting out these principles, the *Vogel* court had determined that one of the contract terms before it was ambiguous, so *Vogel* does not apply here. It states that none of the terms before this court are ambiguous, that Kearney has never argued as much, and that the report and recommendation contained no finding of ambiguity.

It appears, however, that Kearney, in disputing the meaning of certain terms of the contract, has at least implicitly alleged that they are ambiguous, and that the report and recommendation, insofar as it contains an interpretation of certain terms of the contract, also contains a tacit finding that Kearney raised the issue of ambiguity, and that the contention had merit. The court also is mindful that, under Alabama law, "[w]hether a contract is ambiguous is *a question of law* for the

trial court." *Haddox v. First Alabama Bank of Montgomery, N.A*, 449 So. 2d 1226, 1228 (Ala. 1984) (emphasis supplied). This objection is not well-taken, therefore, and will be overruled.

C. **Objection Regarding Proof as to Breach of Warranty and Breach of Contract Claims**

Landmark next argues that, in the report and recommendation, it was erroneously required to prove that the breach of warranty and breach of contract claims involved "intentional acts" before they could fall outside the definition of an "occurrence." Instead, Landmark asserts, "Kearney had the burden of showing that the allegations in the Complaint and any amendments allege an 'occurrence' as it is defined in the policies. It argues that there is no requirement that the insurer show 'intentional acts' were involved to justify a denial of coverage on grounds that the complaint does not allege an 'occurrence.'" (Doc. 27 at ¶ 4.) Landmark asserts that several of the Alabama cases it cited "make clear" that "no finding of an 'intentional act' is required to exclude the allegations of breach of contract and warranty from the definition of an 'occurrence.'" (*Id.*) Landmark argues that Kearney should have been required to prove by substantial evidence that the allegations are "occurrences" covered by the policies. It argues that certain authority cited in the report and recommendation actually supports Landmark's position in this regard.

The burdens to be imposed in this summary judgment dispute are set forth in section I.A. above. According to the authority cited there, it appears that the analysis contained in the report and recommendation imposed no improper burden on Landmark with respect to the inclusion or exclusion of "intentional acts" within the scope of the term "occurrence." With respect to Landmark's complaint that the cases it cites "make clear" that "no finding of an 'intentional act' is required to exclude the allegations of breach of contract and warranty from the definition of an 'occurrence,'" the court notes that the report and recommendation contains an analysis in which the cases offered by Landmark were closely examined and rejected. Leaving aside the indications that the "duty to defend" issue appears, as is noted above, to be based upon a neutral evaluation by the court, rather than a burden-shifting scheme, then even if Landmark did not have the burden at trial of making such a showing, it would still have the burden as the summary judgment movant of

"produc[ing] affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial," or "to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question." *Stedman*, 219 F. Supp. 2d at 1215. According to the analysis contained in the report and recommendation, this it did not do. This objection must therefore be overruled.

D.  **Objection Regarding Determination that Landmark Failed to Prove the Defendant in the Underlying Action Was Not a "Named Insured."**

Landmark next argues that the report and recommendation is erroneous, in that it contains a determination that Landmark failed to prove that the defendant in the underlying action was not a "Named Insured." (Doc. 27 at ¶ 5 (citing doc. 26 at 33-34). Landmark argues that the burden should have been on Kearney to prove that there was coverage, and that it is due summary judgment on all issues because of Kearney's lack of proof regarding coverage. (*Id.* at ¶ 6.)

Again, this objection is inconsistent with Landmark's burden as the summary judgment movant. This objection must therefore be denied.

E.  **Objection Regarding Alleged Non-Application of Alabama law**

Landmark further argues that Alabama law was not applied in the report and recommendation, as was required under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). (Doc. 27 at ¶ 6.) It argues that the report and recommendation does not explain why the Alabama cases offered by Landmark do not show that there is no genuine issue of material fact as to the products-completed, operations-hazard coverage. (*Id.*)

Landmark's reason for alleging that Alabama law was not applied in the report and recommendation is not entirely clear; the report and recommendation contains numerous applications of Alabama law. Landmark apparently disagrees with the manner in which Alabama law was applied. In the particular section of the analysis cited by Landmark, that dealing with the products-completed, operations-hazard exclusion, the report and recommendation refers to three cases cited by Landmark in support of its position, but states that "Landmark's arguments on this issue are cursory, and do not adequately demonstrate that there is no genuine issue of material fact

with respect to whether the exclusion applies in this instance and to whether Landmark must defend Kearney on the claims in the underlying action." (Doc. 26 at 31.)

It appears that what Landmark calls an abdication of judicial duties under *Erie* actually is a consequence of its failure to demonstrate how the authority it cited in support of its position applied to this controversy. Landmark had the burden of showing that there is no genuine issue of material fact with respect to whether the exclusion applies in this instance, and the citation of three cases without attempting to apply them to the particular facts before the court is not sufficient to meet that burden. Landmark should have analyzed Kearney's role in the dispute in relation to the provisions of the policies and the applicable authority. Although Landmark mentioned two Alabama cases and quoted a Second Circuit case, it did not apply them to the facts at hand. And, as the report and recommendation implicitly finds, the proper application of this authority to the facts is not obvious just by virtue of a mere recitation of the authority. As Landmark did not offer argument permitting it to meet its burden as the summary judgment movant on this issue, this objection to the report and recommendation is due to be overruled.

F. **Objection Regarding Finding That Landmark Failed to Meet its Burden With Respect to the Claim That Kearney's Notice Was Untimely as a Matter of Law**

Landmark next argues that the report and recommendation contains an erroneous finding that Landmark failed to meet its burden in showing that notice was untimely as a matter of law. (Doc. 27 at ¶ 7.) It asserts that the factual considerations mentioned in the report and recommendation are either irrelevant to the notice question or should have weighed in Landmark's favor. (*Id.*) The relevant policies provide as follows:

> 2. Duties in The Event Of Occurrence, Offense, Claim or Suit.
>
>> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

(Doc. 15, Exs. A, B and C.) The Alabama Supreme Court has stated as follows:

> If an "occurrence" takes place, or a "claim" is made, or a "suit" is filed, the policy requires that the insured give [the insurer] notice "as soon as practicable." This Court has held:

8

> "The requirement of notice 'as soon as practicable' means that the insured must give notice 'within a reasonable time under all the circumstances.' *See American Liberty Insurance Co. v. Soules*, 288 Ala. 163, 258 So. 2d 872 (1972). In making this determination, the only factors to be considered are the length of the delay in giving notice and the reasons therefor. Absence of prejudice to the insurer from the delay is not a factor to be considered. *Southern Guaranty Insurance Co. v. Thomas*, 334 So. 2d 879 (Ala. 1976)."

*Bonitz Insulation*, 424 So. 2d at 572.[3] In *Thomas*, cited by this Court in *Bonitz Insulation*, this Court stated:

> "Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question ... for the [trier of fact]. *Provident Life & Accident Ins. Co. v. Heidelberg*, 228 Ala. 682, 154 So. 809 ([Ala.] 1934). Conflicting inferences concerning the reasonableness of a delay may sometimes be drawn where the insured offers evidence of mitigating circumstances.
>
> "'However, where an insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice....'
>
> "*Zurich General Accident & Liability Insurance Co. v. Harbil Restaurant, Inc.*, 7 A.D.2d 433, 435, 184 N.Y.S.2d 51, 53 (1959)."

*Thomas*, 334 So. 2d 879, 882-83. Thus, the determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay.

*U.S. Fidelity and Guar. Co. v. Baldwin County Home Builders Ass'n, Inc.*, 770 So. 2d 72, 75 (Ala. 2000).

Landmark complains that it offered a number of Alabama cases showing that the notice provided was untimely as a matter of law,[4] as well as evidence that Kearney had notice of a

---

[3] *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co.*, 424 So. 2d 569 (Ala. 1982).

[4] Landmark apparently offers these cases to show that notification given after a 24-month delay is untimely as a matter of law. They do not support Landmark's argument that Kearney's duty to send notification was triggered by Precision's revocation of acceptance. Several of the cases, for instance, merely address delays in notification measuring from the time suit was filed or the defendant insured was served. *B & M Homes, Inc. v. American Liberty Ins. Co.*, 356 So. 2d 1195 (Ala. 1978) (notice given to insurer seven months after complaint filed); *Pharr v. Continental Cas. Co.*, 429 So. 2d 1018 (Ala. 1983) (notice given eight months after insured was served with complaint). Measured from the date suit was filed, Kearney's notification would be timely.

In *Southern Guaranty Ins. Co. v. Thomas*, 334 So. 2d 879 (Ala. 1976), the delay in notification was measured from the insured's receipt of a demand letter from Precision's lawyer, which stated an intent to sue the insured and advised him to notify his insurance carrier. There is no evidence here that Precision made any such communication to Kearney.

In *Aetna Ins. Co. v. Spring Lake, Inc.*, 350 So. 2d 397 (Ala. 1977), the delay was measured from when the insured should have known coverage existed at the time of the drowning incident giving rise to the dispute. The court

potential claim long before it notified Landmark. (*Id.*) It asserts that, "even though Kearney argued that it could not have known that suit was going to be brought against it, it should have known, at the very latest on October 20, 2000,[5] when Precision revoked its acceptance of the equipment via letter to Kearney." (*Id.*) Landmark thus argues that Kearney delayed giving it notice for two years, measuring from the Precision's revocation of acceptance. Kearney argues that the delay was one

---

examined correspondence between the insured's representative and the insurance agency and found that the agency had clearly given the insured information which should have alerted it that the policy was in effect on the date of the incident. *Spring Lake*, 350 So. 2d at 398, 400-401. There was no doubt as to whether the insured, which owned the recreational facility where the drowning took place, would be the party sued and potentially liable. In this case, however, Kearney argues that it merely procured and coordinated Precision's order for the purchase/lease of equipment, and it submits evidence showing that Precision did not buy the equipment from it or look to it for repairs or warranties on the equipment, or training employees on it. (Doc. 17 at Ex. 5). This indicates that Kearney had a much more tangential role in this dispute than did the insured in *Spring Lake*.

In *Dill v. Colonial Ins. Co. of California*, 569 So. 2d 385 (Ala. 1990), the passenger in a rental car driven by the insured suffered injuries when the car was in a collision. The passenger asked the insured if he had coverage for the accident, but the insured had never seen or read his policy and did not know he had coverage. *Dill*, 569 So. 2d at 386. Almost two years after the collision, the passenger discovered that the insured had coverage for the accident and contacted the insurer. *Id.*. The court found that, under the circumstances, the delay in notification was not unreasonable as a matter of law. *Id.* at 386-87.

In *Standifer v. Aetna Cas. & Sur. Co.*, 319 F. Supp. 1385 (N.D. Ala. 1970), the insured notified the insurer 28 months after suit was filed and 16 months after obtaining judgments against an uninsured motorist. Kearney compares favorably to the insured in *Standifer*, since it notified Landmark a month after suit was filed.

In *Phoenix Assur. Co. of New York v. Harry Harless Co.*, 414 F.2d 794 (5th Cir. 1969), there was a fire at a location protected by fire extinguishers that were serviced by the insured's company. The insured knew about the fire within a few days of its occurrence. He also knew that the fire extinguishers serviced by the company may have failed and that claims might be asserted against the company, but he still waited for four months after the fire to notify the insurer. As a result, he was barred from asserting a claim against the insurer. The nature of the damage giving rise to the claims in *Harless*–a sudden and catastrophic accident-- is different from that in this case. The responsibility and potential liability of the insured in *Harless* was clear, whereas the evidence here indicates that even Precision viewed Kearney has having a highly limited role in its lease/purchase of the equipment.

In *United States Fidelity & Guar. v. Bonitz*, 424 So. 2d 569 (Ala. 1982), the insured contracted to construct the roofing and insulation of a gymnasium, and subcontracted part of the job. Within a year of construction, the roof began to leak, and the insured was twice notified of problems by letter. *Bonitz*, 424 So. 2d at 571. The insured referred both complaints to the subcontractor, which attempted repairs on several occasions. *Id.* The problems persisted, and the roof had to be replaced. *Id.* When suit was filed, the insured immediately notified the two insurers that had provided coverage during the relevant time period. *Id.* One of the insurers argued that the insured should have sent notification when it learned of leaking problems. *Id.* at 572. The insured offered mitigating evidence that such problems were common, that it was unaware of the extent of the problem and that it believed that the subcontractor was taking care of it. *Id.* at 573. The court found that such mitigating evidence allowed for conflicting inferences to be drawn and that the question was thus one for the trier of fact. *Id.*. If anything, this case would seem to support Kearney's position, as the court upheld the trial court's finding that a delay of over four years from the date of the second letter of complaint to notification was not unreasonable. As in that case, the insured has indicated that it believed another party more centrally involved in the subject matter of the dispute was responsible for addressing the equipment problems raised by the underlying insured. In addition, it offers evidence that the Precision also viewed another party as responsible for addressing those problems.

Thus, while these cases may provide guidance as to whether certain delays may be so lengthy enough to be held untimely, to the extent that they provide any guidance as to other notification issues, they appear to offer more support to Kearney's position than to Landmark's.

[5] This is apparently a typographical error. From the context, it appears that Landmark intended that this date read "October 16, 1998."

month, measuring from the time suit was filed against it.

Since Landmark argues that none of the claims in this case arise out of an "occurrence" within the terms of the policy, its argument presumably rests upon the other circumstance giving rise to the insured's duty to notify: "an offense which may result in a claim." The policies do not define "offense" or "claim" so it is unclear whether there was such an "offense" within the terms of the policy at any time, much less whether any potential offense was committed by Kearney, or whether such may have occurred at or before the time of Precision's revocation. Genuine issues of material fact appear to remain with respect to whether the duty to notify was triggered under this provision of the policy.

Furthermore, the mechanism that Landmark claims triggered Kearney's duty to notify (Precision's letter revoking acceptance of the equipment) is not before the court. The court thus cannot determine whether the letter actually contained information that should have made Kearney aware that its duty to notify had been triggered. Nor does Landmark demonstrate why the mere fact that there was a revocation of acceptance should have made Kearney aware that its duty to notify Landmark had been triggered. In sum, Landmark has abjectly failed to demonstrate that there are no genuine issues of material fact with respect to this issue so as to satisfy its burden with respect to the motion for summary judgment.

Even assuming that Kearney's duty to notify Landmark had somehow been triggered by the mere fact that acceptance was revoked, it still would have difficulty meeting its burden as summary judgment movant. Kearney argues, in essence, that any delay between the revocation of acceptance and its delivery of notice to Landmark was justified, because it had no reason to believe it was responsible for the problems with the equipment — as it did not sell the equipment, have any duty to repair it, train employees to use it, or fulfill warranty requirements with respect to it. Kearney offers the testimony of Precision's corporate representative, John Albritton, which indicates that, in Precision's view, Kearney did not sell the equipment, and was not responsible for the warranty

items or for training anyone in relation to the equipment or for servicing the equipment.[6] (Doc. 17, Ex. 5 at 160-62.) If the revocation of acceptance contained information triggering some sort of duty to notify Landmark, the evidence that Precision did not actually view Kearney as having a duty with respect to the equipment could serve as evidence of mitigating circumstances justifying Kearney's delay in notifying Landmark.[7] This indicates that this may be one of those cases where the "facts are disputed or where conflicting inferences may reasonably be drawn from the evidence," in which case "the question of the reasonableness of a delay in giving notice is a question . . . for the [trier of fact]." *Baldwin*, 770 So. 2d at 75 (citations omitted). As such, the case is not amenable to summary judgment on the basis of the timeliness of notification issues raised by Landmark.

### G. Objection Regarding the Conclusion That Kearney Should Be Allowed to Amend the Pleadings.

Landmark next argues that the report and recommendation contains an erroneous conclusion that Kearney should be allowed to amend the pleadings in order to assert a counterclaim, since Kearney failed to do so within the first two years of this case. (Doc. 27 at ¶ 8.) It complains that Kearney presented no evidence that its delay in asserting a counterclaim was due to oversight, inadvertence, or excusable neglect — three of the reasons an omitted counterclaim can be added under Rule 13(f) of the Federal Rules of Civil Procedure. (*Id.*)[8]   As is pointed out in the report

---

[6] It is not clear whether such testimony was the basis for Circuit Court's terse order granting summary judgment in Kearney's behalf in October 2001, but it would support the assertion that Kearney simply procured and coordinated Precision's order for its purchase/lease of the equipment, which assertion Kearney states was the basis of its successful summary judgment motion. (Doc. 17 at 2, Ex. 4).

[7] The Alabama courts have recognized the following statement of law:

> It is generally recognized that the insured may be excused for a delay or failure to give the required notice to the insurer where it appears that, acting as a reasonably prudent person, he believed that he was not liable for the accident. Thus where the insured has no reasonable grounds for believing that any act or omission by it, or any act of its employees was the cause of an injury upon which an action was later based by an injured party against the insured, the insured was held not to be required to give any notice to the insurer under a liability policy requiring notice of an accident to be given "as soon as practicable."

44 Am. Jur. 2d Insurance § 1474 (1969) [Footnotes omitted.]. The Alabama Supreme Court adopted the above statement in *Thomas, supra*.

[8] The report and recommendation contained a finding that the counterclaim was apparently omitted due to inadvertence. Although Landmark argues that Kearney merely cited Rule 13(f) language regarding "oversight, inadvertence or inexcusable neglect," without detailing how this rule applies to the current case, the court is inclined to agree with the conclusion contained in the report and recommendation that Kearney appears to have inadvertently omitted to file a counterclaim. In that event, it would make little sense to require Kearney to file separate actions for

and recommendation, however, Kearney argued that

> the motion should be granted under Rule 13(f) of the *Federal Rules of Civil Procedure*, under which a party may seek the leave of court to set up a counterclaim by amendment when such a counterclaim has been omitted by oversight, inadvertence or excusable neglect, *as well as under Rule 15(a)*, under which a party may amend its pleadings by leave of court and under which "leave shall be freely given when justice so requires."

(Doc. 26 at 34 (emphasis supplied).) Furthermore, as is reflected in the report and recommendation,

> It is also clear that, if the counterclaim is not allowed in this action, Kearney would potentially be forced to file a separate action in order to obtain any money it may be due under the policies. This raises the specter of duplicative judicial efforts, the avoidance of which is desireable [sic] under Rule 15(a), in particular.

(Doc. 26 at 35.) The court agrees with this reasoning. It would be contrary to the interests of judicial economy to require the filing of a second action in order to determine the monetary damages to which Kearney may be entitled as a result of the court's determination of the issues currently before the court. This objection to the report and recommendation is due to be overruled.

### H.   Objection Regarding the Determination That the Amount Kearney Requests in the Counterclaim Should Be Readily Ascertainable.

Landmark also argues that the report and recommendation contains an erroneous finding that the amount Kearney requests in its counterclaim "should be readily ascertainable, if not from existing discovery, such as the evidence included in Kearney's witness and exhibit lists, then by additional affidavits or submissions needed to determine the amount." (Doc. 27 at ¶ 8 (citing doc. 26 at 35).) Landmark argues (1) that there has been no discovery taken regarding attorney's fees, (2) that the counterclaim does not itemize such information, (3) that Kearney has not made any Rule 26 disclosures with respect to such information and (4) that Kearney's counsel has provided Landmark's counsel with conflicting figures on three separate occasions. (*Id*). Landmark concludes that "discovery would have to be reopened, and reopening discovery on a two year old case prejudices all of the parties involved."

The court agrees with the opinion set forth in the report and recommendation that

---

liability and damages. But the magistrate judge's recommendation as to the motion to amend is independently based upon Rule 15(a), as is explained above, so this objection is due to be overruled whether or not the magistrate judge's finding of "apparent inadvertence" is correct.

13

determining the amount of attorneys' fees due under the policies should not be so complex as to render it prohibitive to do so in this action. And if, as Landmark says, some limited discovery is necessary to make such a determination, it will still serve the purposes of judicial economy to take care of all those issues in this action, rather than requiring Kearney to file a new action, in which the same discovery would be need to be conducted, regardless. Although Landmark argues that "reopening discovery on a two year old case prejudices all of the parties involved," it has not stated how the parties would be prejudiced in such an event. The sensible thing to do is to resolve all the outstanding issue of the action in one fell swoop in an existing action where the court and the parties are all familiar with the case and the proceedings. Landmark's objections in this regard are due to be overruled.

## II. CONCLUSION

The court has considered the entire file in this action together with the magistrate judge's report and recommendation and plaintiff's objections thereto. Having done so, the court has reached an independent conclusion that the report and recommendation is due to be adopted and approved. The court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusions of the court. The court further finds that plaintiff's objections to the report and recommendation are due to be overruled, that plaintiff's motion for summary judgment is due to be granted in part and denied in part in accordance with the report and recommendation, and that defendant Kearney's motion to amend is due to be granted. An appropriate order will be entered concurrently herewith.

DONE this **2nd** day of April, 2003.

_____
United States District Judge